UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

BALJINDER SINGH,

                        Petitioner,

        v.

PAMELA BONDI, et al,

                        Respondent.

Case No. 2:26-cv-00582-TLF

ORDER GRANTING IN PART AND
DENYING IN PART PETITION
FOR WRIT OF HABEAS CORPUS

Immigration detainee Baljinder Singh petitions the Court under 28 U.S.C. § 2241 for an order (1) immediately releasing him from detention on the same conditions he was subject to immediately prior to his recent re-detention or, alternatively, providing him a bond hearing pursuant to 8 U.S.C. § 1226(a) and the Due Process Clause within seven days; (2) enjoining his re-detention for any purpose, absent exigent circumstances, without providing petitioner notice and a pre-detention hearing before an immigration judge where the Government will have the burden to demonstrate a change in circumstances justifying petitioner's re-detention; (3) declaring that petitioner's detention is unlawful; and (5) awarding attorney fees and costs. Dkt. 1 (petition) at 17-18.

**BACKGROUND**

Petitioner is a native and citizen of India born in 2000. Dkt. 8 (Declaration of Deportation Officer Andre Ouk ("Ouk Decl.")) ¶ 3. On November 1, 2024, he entered the

ORDER GRANTING IN PART AND DENYING IN PART
PETITION FOR WRIT OF HABEAS CORPUS - 1

United States from Mexico near the Calexico Port of Entry without inspection or admission by any immigration officer and was taken into custody by U.S. Border Patrol. *Id.* ¶ 4; Dkt. 9 (Declaration of Lawrence Van Daley ("Van Daley Decl."), Ex. 1 (Notice to Appear). The following day, on November 2, 2024, he was placed in expedited removal proceedings under 8 U.S.C. § 1225(b)(1). Dkt. 8 (Ouk Decl.) ¶ 5; Dkt. 9 (Van Daley Decl.) Ex. 2 (Notice and Order of Expedited Removal). On November 15, 2024, he expressed a fear of returning to India. Dkt. 8 (Ouk Decl.) ¶ 6.

On December 6, 2024, U.S. Citizenship and Immigration Services (USCIS) issued a negative credible-fear determination. *Id.* ¶ 7. Petitioner requested review by an Immigration Judge. *Id.* On December 13, 2024, an Immigration Judge in Pearsall, Texas, vacated the negative credible-fear finding and ordered the matter transferred to full removal proceedings under section 240 of the Immigration and Nationality Act. *Id.* ¶ 10.

On December 18, 2024, USCIS personally served petitioner with a Notice to Appear charging him as inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i)[1] and 8 U.S.C. § 1182(a)(7)(A)(i)(I).[2] *Id.* ¶ 11; Dkt. 9 (Van Daley Decl.), Ex. 1.

---

[1] 8 U.S.C. § 1182(a)(6)(A)(i) provides: "An alien present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General, is inadmissible."

[2] 8 U.S.C. § 1182(a)(7)(A)(i)(I) provides:

> Except as otherwise specifically provided in this chapter, any immigrant at the time of application for admission--
> (I) who is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document required by this chapter, and a valid unexpired passport, or other suitable travel document, or document of identity and nationality if such document is required under the regulations issued by the Attorney General under section 1181(a) of this title…is inadmissible.

ORDER GRANTING IN PART AND DENYING IN PART
PETITION FOR WRIT OF HABEAS CORPUS - 2

On January 13, 2025, the record shows petitioner was released from the South Texas ICE Processing Center on discretionary parole pursuant to 8 U.S.C. § 1182(d)(5)(A) and enrolled in the Alternatives to Detention (ATD) program. Dkt. 8 (Ouk Decl.), ¶ 12; Dkt. 9 (Van Daley Decl.), Ex. 3 (Interim Notice Authorizing Parole). On February 11, 2025, petitioner filed a Form I-589 application for asylum with the Executive Office for Immigration Review ("EOIR"). Dkt. 8 (Ouk Decl.), ¶ 13.

A declaration from Deportation Officer Andre Ouk, Dkt. 8, states that:

On August 6, 2025, petitioner failed a virtual home visit. *Id.* at ¶ 14. The case specialist attempted to contact petitioner twice via phone and all attempts were unsuccessful. *Id.* On September 5, 2025, petitioner failed to be present for a scheduled home visit. *Id.* ¶ 15. On September 19, 2025, petitioner missed an office visit. *Id.* ¶ 16. On October 27, 2025, petitioner missed a telephonic callback. *Id.* ¶ 17. On December 24, 2025, petitioner failed a virtual home visit as he was in the wrong location. *Id.* ¶ 18.

Petitioner's counsel submits a declaration, in reply, disputing Officer Ouk's characterization of these events asserting that the alleged missed visits and phone calls by petitioner were not intentional and providing explanations for them. Dkt. 11. Specifically, petitioner's counsel asserts that these "missed" home visits or telephonic check-ins were due to ICE's video system malfunctioning, petitioner's own mobile phone malfunctioning (which he promptly rectified and notified ICE of the issue), ICE changing reporting instructions without allowing the petitioner the opportunity to comply with the change, ICE failing to provide clear instructions regarding the number petitioner was required to call for a scheduled telephonic call-back, and ICE calling at night,

outside the typical time frame for ICE automated calls, and when petitioner was working. *Id.*

On January 8, 2026, petitioner reported as directed to ICE Enforcement and Removal Operations officers in Seattle, Washington and was taken into custody. Dkt. 8 (Ouk Decl.), ¶ 19; Dkt. 9 (Van Daley Decl.), Ex. 4. Deportation Officer Ouk states that petitioner was taken into custody for the five documented violations of his ATD conditions . Dkt. 8 (Ouk Decl.), ¶ 19. Petitioner was transferred the same day to NWIPC, where he remains detained. *Id.* ¶ 19; Dkt. 9 (Van Daley Decl.), Ex. 5, (Custody Determination), Ex. 6, (Form I-830).

On February 3, 2026, the Immigration Judge in Tacoma sustained the charges on the Notice to Appear and designated India as the country of removal. Dkt. 8 (Ouk Decl.), ¶ 20. On March 2, 2026, petitioner appeared for his merits hearing on the asylum application; counsel requested a continuance, and the hearing was reset for March 17, 2026. *Id.* ¶ 21.

<b>RELEVANT LEGAL STANDARDS</b>

**A.    Habeas Corpus**

Federal courts have authority to grant writs of habeas corpus to individuals in custody if such custody is a "violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and...the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). To obtain habeas relief, habeas petitioners have the burden of demonstrating

there is no lawful basis for their detention by a preponderance of the evidence. *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004); 8 U.S.C. § 2241(c).

**B.     Discretionary v. Mandatory Detention and Humanitarian Parole**

Under 8 U.S.C. § 1226, the government has significant discretion with respect to noncitizens[3] who are "detained pending a decision on whether the [noncitizen] is to be removed from the United States." As long as the detained noncitizen does not meet the requirements for detention under § 1226(c), the Attorney General may release the noncitizen on "bond" or "conditional parole." 8 U.S.C. § 1226(a)(1)–(2). Release is proper where the noncitizen "satisfies [the government] that he will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding." § 1226(a)(4).

If a noncitizen wishes to contest the initial custody determination — the denial or amount of bond, they have a statutory right to do so before an immigration judge. 8 C.F.R. § 1236.1(d)(1); *see Rodriguez v. LaRose*, No. 3:25-CV-02940-RBM-JLB, 2025 WL 3456475, at *4 (S.D. Cal. Dec. 2, 2025) (differentiating between mandatory detention under § 1225 and discretionary detention under § 1226).

Under 8 U.S.C. § 1225, there are two categories of "applicants for admission"— noncitizens who "arrive[ ] in the United States," or are "present" in the United States but have "not been admitted." 8 U.S.C. § 1225(a)(1). First, applicants who are covered by § 1225(b)(1) and second, applicants who are covered by § 1225(b)(2). *See Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018). Section 1225(b)(1), applies to, among others,

---

[3] The Court uses the term "noncitizen" as equivalent to the term "alien" that is used in the statute. *See Nasrallah v. Barr,* 590 U.S. 573, 578 n.2 (2020) (citing 8 U.S.C. § 1101(a)(3)).

ORDER GRANTING IN PART AND DENYING IN PART
PETITION FOR WRIT OF HABEAS CORPUS - 5

noncitizens initially determined to be inadmissible because of fraud, misrepresentation, or lack of valid documentation. *Id.* (citing § 1225(b)(1)(A)(i)). Section 1225(b)(2) is broader and "serves as the catchall provision that applies to all applicants for admission not covered by § 1225(b)(1)" (with specific exceptions). *Id.* at 287-88 (citing §§1225(b)(2)(A), (B)).

"Normally, noncitizens covered by § 1225(b)(1) are subject to an expedited removal process that does not include a hearing before an Immigration Judge or review of the removal order." *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1116 (W.D. Wash. 2019) (citing 8 U.S.C. § 1225(b)(1)(A)(i)). But, where a noncitizen "indicates either an intention to apply for asylum ... or a fear of persecution," the inspecting immigration officer must refer that noncitizen for an interview with an asylum officer. 8 U.S.C. § 1225(b)(1)(A)(ii); 8 C.F.R. § 208.30(d). Thereafter, if the asylum officer determines that the noncitizen has a credible fear of persecution, then the noncitizen "shall be detained for further consideration of the application for asylum." 8 U.S.C. § 1225(b)(1)(B)(ii); *Banda*, 385 F. Supp. 3d at 1112.

The Supreme Court in *Jennings* has held "1225(b)(1) mandates detention 'for further consideration of the application for asylum,' § 1225(b)(1)(B)(ii), and § 1225(b)(2) requires detention 'for a [removal] proceeding,' § 1225(b)(2)(A). The plain meaning of those phrases is that detention must continue until immigration officers have finished 'consider [ing]' the application for asylum, § 1225(b)(1)(B)(ii), or until removal proceedings have concluded, § 1225(b)(2)(A)." 583 U.S. at 299.

Applicants for admission are subject to mandatory detention and may only be released on parole "on a case-by-case basis for urgent humanitarian reasons or

ORDER GRANTING IN PART AND DENYING IN PART
PETITION FOR WRIT OF HABEAS CORPUS - 6

significant public benefit[.]" 8 U.S.C. § 1182(d)(5)(A)' *Jennings*, 583 U.S. at 287. The implementing regulations include another requirement for parole under 8 U.S.C. § 1182(d)(5)(A): the noncitizen must "present neither a security risk nor a risk of absconding." 8 C.F.R. § 212.5(b). "Thus, if a noncitizen has been granted parole, it means that a [Department of Homeland Security] DHS official with authority determined that there were either 'urgent humanitarian reasons' or 'significant public benefit' justifying the parole of that individual, and that the individual did not pose a security or flight risk." *Zavorin v. Wamsley*, No. 2:26-CV-00173-DGE, 2026 WL 309733, at *2 (W.D. Wash. Feb. 5, 2026).

To revoke parole: (1) "the purpose for which parole was authorized" must have been accomplished or a DHS official with authority must decide that "neither humanitarian reasons nor public benefit warrants the continued presence of the alien in the United States"; and (2) written notice must be provided to the noncitizen. 8 C.F.R. § 212.5(e)(2)(i) (upon accomplishment of the purpose for which parole was authorized or in the opinion of one of the officials that neither humanitarian reasons nor public benefits warrants continued presence, "parole shall be terminated upon written notice to" the noncitizen); *see also* 8 U.S.C. § 1182(d)(5)(A) ("[W]hen the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which he was paroled[.]"); *Zavorin*, 2026 WL 309733, at *2.

## DISCUSSION

**A.    Due Process**

The Due Process Clause of the Fifth Amendment to the United States Constitution prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law[.]" The right to due process extends to "all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.' " *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).

The Ninth Circuit in *Rodriguez Diaz v. Garland* assumed without deciding that the *Mathews* three-part test applies in "the immigration detention context." 53 F.4th 1189, 1206–07 (9th Cir. 2022). And district courts have since applied the *Mathews* test in similar circumstances. *See E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1320–21 (W.D. Wash. 2025); *Zavorin*, 2026 WL 309733, at *2.

Determining whether a governmental action violates "the specific dictates of due process generally requires consideration of three distinct factors" under *Mathews*: The private interest affected by the official action; the risk of erroneous deprivation of such interest through the procedures used, and the probable value of additional or substitute procedural safeguards; and the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural

ORDER GRANTING IN PART AND DENYING IN PART
PETITION FOR WRIT OF HABEAS CORPUS - 8

requirement would entail. 424 U.S. at 335.

1. Private Interest

As to the first factor, the Court rejects the notion that petitioner's weighty liberty interest is greatly diminished solely because he is a noncitizen in immigration proceedings. *See Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) (Freedom from restraint is at the core of the liberty protected by the Due Process Clause from arbitrary governmental action) *see also Zadvydas*, 533 U.S. at 693 ("[T]he Due Process Clause applies to all "persons" within the United States, including noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent.").

Even under circumstances where the initial decision to detain or release an individual is discretionary, the government's decision to release an individual from custody creates "an implicit promise, [upon which they may rely,] that parole will be revoked only if [they] fail[ ] to live up to the...conditions [of release]." *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972). As the Supreme Court described in *Morrissey*, in addressing parole in the criminal context, "[parole] enables [the parolee] to do a wide range of things open to persons who have never been [in custody or] convicted of any crime[, such as, subject to conditions of parole, to work and to] be with family and friends and to form the other enduring attachments of normal life." 408 U.S. at 482. "Though the [government] properly subjects [the parolee] to many restrictions not applicable to other citizens, [their] condition is very different from that of confinement in a prison." *Id.* "The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions," and the loss of liberty "inflicts a grievous loss on the parolee[.]" *Id.* at 481–84. Thus, the parolee possesses a

protected interest in his "continued liberty." *Id.* at 482. This Court "joins many others in finding that humanitarian parole can establish the same kinds of liberty interests described in *Morrissey*." *Torres v. Hermosillo*, 25-cv-02687-LK, 2026 WL 145715, at *5 (W.D. Wash. Jan. 20, 2026) (collecting cases).

Here, the record shows petitioner was released on humanitarian parole under 8 U.S.C. § 1182(d)(5)(A) and has been successful on parole in the United States for more than a year. He has a protected liberty interest in remaining out of custody.

The first factor weighs in petitioner's favor.

2.  Risk of Erroneous Deprivation

The second *Mathews* factor considers whether a particular process results in a risk of erroneous deprivation of a protected interest and the probable value, if any, of additional or substitute procedural safeguards.

The Supreme Court "usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *See Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original). Yet there "may be situations that urgently require arrest, in which a prompt post-deprivation hearing is appropriate." *Martinez Hernandez v. Andrews*, No. 1:25-CV-01035 JLT HBK, 2025 WL 2495767, at *11 - *12 (E.D. Cal. Aug. 28, 2025) (citing *Zinermon*, 494 U.S. at 128 (noting there may be "special case[s]" where a pre-deprivation hearing is impracticable); *Guillermo M. R. v. Kaiser*, 791 F. Supp. 3d 1021, 1031-1032, 1036 (N.D. Cal. 2025) ("absent evidence of urgent concerns, a *pre*-deprivation hearing is required to satisfy due process, particularly where an individual has been released on bond by an IJ").

ORDER GRANTING IN PART AND DENYING IN PART
PETITION FOR WRIT OF HABEAS CORPUS - 10

Courts have also held that where a noncitizen is released after an evaluation of their dangerousness and flight risk, their re-arrest and re-detention generally requires a showing of a material change in circumstance. *See, e.g.*, *dos Santos v. Noem*, No. 1:25-CV-12052-JEK, 2025 WL 2370988, at *9 (D. Mass. Aug. 14, 2025) (granting habeas relief and immediate release where Government presented no evidence that "a change in circumstances" supported its decision to revoke the IJ's bond order); *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1197 (N.D. Cal. 2017) (citing *Sugay* and noting government counsel's representation that "DHS has incorporated [*Sugay*'s] holding into its practice, requiring a showing of changed circumstances both where the prior bond determination was made by an immigration judge and where the previous release decision was made by a DHS officer"), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018).

Furthermore, for those released on humanitarian parole :

> [D]ue process at least requires that (1) the government justify the basis for re-detention, as prescribed by the statute and its implementing regulations, and (2) [the noncitizen] be given the opportunity to be heard with respect to the government's basis for re-detention under the applicable statutory and regulatory framework at a meaningful time and in a meaningful manner.

*Dieng v. Hermosillo*, 26-cv-00190-LK, 2026 WL 411857, at *8 (W.D. Wash. Feb. 13, 2026) (internal citations and quotations omitted).

The Government[4] asserts petitioner was properly re-detained based on his failure to comply with the conditions of his parole and ATD supervision on five occasions. But the Government submits no evidence that they revoked petitioner's parole because the original purpose of petitioner's parole was accomplished or that a

---

[4] Hereinafter the Court refers to the respondents collectively as "the Government."

ORDER GRANTING IN PART AND DENYING IN PART
PETITION FOR WRIT OF HABEAS CORPUS - 11

DHS official with authority determined petitioner's continued parole was no longer warranted for "humanitarian reasons" or for the "public benefit." Nor does the Government present any evidence that petitioner was provided with written notice that his parole was being revoked.

The Government submits the declaration of Deportation Officer Ouk who states only vaguely that "[p]etitioner reported in person to Seattle ERO and was taken into custody for five violations of the conditions of his ATD." Dkt. 8 (Ouk Decl.) at 3. The Government also submits a copy of a "Notice of Custody Determination" dated January 8, 2026, which states only that petitioner is being detained but provides no explanation or statement that his parole was being revoked. Dkt. 9 (Van Daley Decl.) Ex. 5. The Government also submits a copy of a "Warrant for Arrest of Alien" which states only that:

> there is probable cause to believe petitioner is removable from the United States … based on …biometric confirmation of the subject's identity and records check of federal databases that affirmatively indicate, by themselves or in addition to other reliable information, that the subject either lacks immigration status or notwithstanding such status is removable under U.S. immigration law; and/or statements made voluntarily by the subject to an immigration officer and/or other reliable evidence that affirmatively indicate the subject either lacks immigration status or notwithstanding such status is removable under U.S. Immigration law.

*Id.* The document provides no explanation or statement that petitioner's parole was being revoked. The record reflects that the Government did not follow the procedures required by its own regulations. *See Telenchana v. Hermosillo*, No. 2:26-CV-00363-GJL, 2026 WL 696806, at *5 (W.D. Wash. Mar. 12, 2026) (Granting habeas petition and release of petitioner where the Government asserted petitioner "violated the terms and conditions of his release by missing biometrics check-ins," but the Respondents'

ORDER GRANTING IN PART AND DENYING IN PART
PETITION FOR WRIT OF HABEAS CORPUS - 12

supporting documentation lacked any allegation or evidence that these violations were the reason for his re-detention, ICE did not assess whether petitioner presented a flight risk or danger to the community, and petitioner did not receive prior written notice of the reasons for his re-detention or a hearing.).

Petitioner's counsel submits a declaration, in reply, disputing the Government's characterization of these events and offering explanations for petitioner's alleged missed visits and telephonic check-ins. The Court notes that petitioner's allegations are presented in the form of a declaration from counsel rather than from petitioner. But even if petitioner's counsel's explanations for petitioner's missed home visits and telephonic check-ins are not considered the Court finds the risk of erroneous deprivation under the circumstances is high. *See Telenchana*, 2026 WL 696806, at *12 (Finding, where petitioner was released on humanitarian parole, even where "circumstances may have changed, [the Government's] failure to follow their own regulations created an undue risk of erroneous deprivation."); *see* 8 C.F.R. § 212.5(b); *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. March 3, 202("[G]iven that Petitioner was previously found to not be a danger or risk of flight...the risk of erroneous deprivation remains high.").

Thus, the Court finds the second *Mathews* factor favors petitioner. *See, e.g.*, *Torres*, 2026 WL 145715, at *7 ("the risk of erroneous deprivation is significant where the government fails to follow its own procedures for revocation of parole, thus depriving the noncitizen of process due prior to revocation").

3. Government's Interest

The Government has an interest in "ensuring the appearance of [noncitizens] at future immigration proceedings" and "preventing danger to the community." *Zadvydas*,

ORDER GRANTING IN PART AND DENYING IN PART
PETITION FOR WRIT OF HABEAS CORPUS - 13

533 U.S. at 690. But the Government's interest in bypassing basic procedural protections is low. *See Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) ("If the government wishes to re-arrest [petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so *without a hearing* is low.") (emphasis added).

Although it would require the expenditure of resources to provide petitioner with pre-deprivation process, those costs are far outweighed by the risk of erroneous deprivation of the liberty interest at issue. And while there may be situations that present some urgency or other grounds requiring arrest, in which a prompt post-deprivation hearing is appropriate, *Martinez Hernandez v. Andrews*, No. 1:25-CV-01035 JLT HBK, 2025 WL 2495767, at *11 - *12 (E.D. Cal. Aug. 28, 2025) (citing *Zinermon*, 494 U.S. at 128), there is insufficient evidence that petitioner's circumstances here presented such a situation. *Zavorin*, 2026 WL 309733, at *2. "[T]he government's interest in efficient administration of the immigration laws at the border is not impermissibly burdened by affording the process laid out in 8 C.F.R. § 212.5 [for revocation of parole] because it is required to follow its own regulations." *O.F.B. v. Maldonado*, No. 25-CV-6336 (HG), 2025 WL 3277677, at *7 (E.D.N.Y. Nov. 25, 2025) (internal citations and quotations omitted).

The Government does not assert or present evidence that petitioner was arrested or charged with a criminal offense, that officials were concerned petitioner was attempting to abscond based on the handful of missed visits and telephonic check-ins, or that they had made any attempts to locate petitioner based on the alleged missed visits and check-ins.

ORDER GRANTING IN PART AND DENYING IN PART
PETITION FOR WRIT OF HABEAS CORPUS - 14

The record shows officials waited for petitioner to appear in person for his scheduled check-in and then took him into custody without providing him even the process due to him under the Government's own regulations to revoke petitioner's parole. *See N.I. v. Hermosillo*, No. 2:26-CV-00592-BAT, 2026 WL 770038 (W.D. Wash. Mar. 18, 2026) (granting petitioner release where the record showed the Government failed to follow their own regulations in revoking petitioner's parole and the record did not show a likelihood of absconding or that petitioner presented a danger to the community).

This third factor also favors petitioner.

The Court finds all three *Mathews* factors favor petitioner. Petitioner's detention violates Due Process, and he is entitled to release under the conditions that applied before he was re-arrested and re-detained. *See Zavorin*, 2026 WL 309733, at *5 (finding a violation of due process and granting release where the Government failed to follow the statute and regulations in revoking petitioner's humanitarian parole); *Torres*, 2026 WL 145715, at *8 (same).

**B.    Applicable Statutory Detention Provision**

The parties dispute whether petitioner is discretionarily detained under 8 U.S.C. § 1226(a), or mandatorily detained under 8 U.S.C. § 1225(b). The Court need not reach this issue. Even assuming without deciding that § 1225(b) applies, as the Government contends, the Court finds petitioner's Due Process rights were violated, as discussed above, and he is entitled to release. *See Savane v. Francis*, 801 F. Supp. 3d 483, 491 (S.D.N.Y. 2025) ("Even assuming that § 1225 applies, as Respondents contend, Petitioner's due process rights were violated because Respondents did not afford

ORDER GRANTING IN PART AND DENYING IN PART
PETITION FOR WRIT OF HABEAS CORPUS - 15

Petitioner any process at all before detaining him."); *Arias v. Larose*, No. 3:25-CV-02595-BTM-MMP, 2025 WL 3295385, at *4 (S.D. Cal. Nov. 25, 2025) ("[Petitioner's] parole was improperly revoked, making her ineligible for detention under either Section 1225 or Section 1226. Thus, the issue of which statute applies to [Petitioner] is no longer in front of the Court.").

**C.    Permanent Injunctive Relief**

Petitioner requests an order enjoining his re-detention for any purpose, absent exigent circumstances, without providing petitioner notice and a pre-detention hearing before an immigration judge where the Government will have the burden to demonstrate a change in circumstances justifying petitioner's re-detention.

Where habeas petitioners raise Due Process claims and have also invoked the Court's jurisdiction under 28 U.S.C. § 1331, the Court has "the authority both to entertain [the petitioner's] constitutional challenges and to grant injunctive relief in response to them," "irrespective of the accompanying habeas petition." *Roman*, 977 F.3d at 941–42. But "[i]n seeking a permanent injunction, the moving party must convince the court that relief is needed: 'The necessary determination is that there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive.' " *Cummings v. Connell*, 316 F.3d 886, 897 (9th Cir. 2003) (quoting *United States v. W.T. Grant Co.,* 345 U.S. 629, 633 (1953)).

Petitioner does not adequately argue that re-detention is likely, or that such detention is likely to occur without proper notice and an opportunity to be heard. Without argument or evidence petitioner fails to demonstrate he is entitled to the requested relief. *See Torres*, 2026 WL 145715, at *8; *see also Indep. Towers of Wash. v.*

ORDER GRANTING IN PART AND DENYING IN PART
PETITION FOR WRIT OF HABEAS CORPUS - 16

*Washington*, 350 F.3d 925, 929 (9th Cir. 2003) ("Our adversarial system relies on the advocates to inform the discussion and raise the issues to the court."). For this reason, the request for injunctive relief preventing petitioner's re-detention without pre-detention notice and a hearing is denied without prejudice.

**CONCLUSION**

For the reasons stated above, the petition for writ of habeas corpus (Dkt. 1) is GRANTED IN PART AND DENIED IN PART, and the Court ORDERS as follows:

1. Within 24 hours of this order the Government shall release petitioner from custody subject to the conditions of his most recent parole agreement;

2. Within 48 hours of this order, the Government shall file a certification confirming that petitioner has been released;

3. Petitioner's request for prospective injunctive relief is denied without prejudice;

4. The Court will entertain an appropriate post-judgment motion for attorney fees and costs.

Dated this 23rd day of March, 2026.

Theresa L. Fricke
United States Magistrate Judge

ORDER GRANTING IN PART AND DENYING IN PART
PETITION FOR WRIT OF HABEAS CORPUS - 17